May it please the Court, Judith Lott for the petitioner Harpal Kaur. The opposing or the decision that is being appealed is a decision of the Board of Immigration Appeals, but because that decision deferred almost entirely in its reasoning to the decision of the immigration judge, it's the decision of the immigration judge to which I would direct most of my argument. The first question here is whether a reversal of the credibility determination, it would encompass a reversal of the one-year bar issue. The government has argued that this Court has no jurisdiction to look at the one-year bar issue. However, the case of Ramadan v. Gonzales, which is a case that is very new out of this Court, has said that in circumstances where the Court is reviewing questions of law in conjunction with questions of fact. But this is, I mean, if there's anything that is simply a question of fact, isn't this it? Well, no, Your Honor, because the question of law is whether the judge abused her discretion in finding that the credibility of this Respondent was, in finding that Harpal was not credible. She did not follow this Court's law in the determination that Harpal was not credible. There were two areas. But what she was deciding was what day this woman arrived in the United States. And she did that by very traditional legal methods, which didn't even particularly involve the credibility of the client. It involved a documentary investigation into the who arrived in Seattle that day. Well, the second issue here is whether equitable estoppel should apply, because the government itself tried to... Whether what should apply, I'm sorry? Equitable estoppel. Because the government itself charged this person, Harpal Kaur, of entering the United States without inspection on November 20, 2002. It was admitted on the record by Harpal Kaur and her attorney that that was, in fact, her arrival date and that she was subject to removal because she did not maintain legal status in this country at the time that her hearing was heard. This Court in Socap Gonzalez v. INS and also the Eighth Circuit in Mejia Perez v. Gonzalez did recognize a situation where if there was a false promise made by the government to the applicant and the applicant detrimentally relied on that false promise... But here, I mean, this is an unusual case in that regard, too, because the case was continued for this very purpose. They knew exactly what was happening during that time period. So she could have gone and done her own investigation and put on her own case. Well, I would argue that she expected the government investigation to corroborate her testimony. The fact that it came up with an alternate conclusion or that the immigration judge came up with an alternate... But that doesn't have anything to do with her being sandbagged or not giving notice. She was given notice. In other words, at that point, we know that the government was looking to demonstrate or may have been demonstrating that she was not, in fact, present at that point. And, I mean, that's just a function of the way these INS hearings, the DHS hearings run, because they don't have discovery and people are surprised. Well, more importantly, Your Honor, I would argue that even if there were an inconsistency in the record on that issue, the inconsistency does not go to the heart of the Respondent of Ms. Carr's claim of persecution. And... But that's not pertinent to the asylum claim. It might be pertinent to the withdrawal, to the withholding, right? Because the asylum is out if she's not timely. No, because before the REAL ID Act, inconsistencies that did not go to the heart of the claim... Yes, but if she didn't apply timely, then she didn't apply timely and she's out. Well, I would argue that the Court is required to consider credible testimony as evidence, and the Court found that the testimony was not credible on two issues. First, the government didn't find a document that said that she entered when she entered. Second, the Court found that there was... Can I ask that you go to the withholding issue? I mean, my understanding of the situation is this. We do not have jurisdiction, even under Ramadan, to decide a purely factual issue. Whether or not she arrived on November 20, 2002 or on some other day is a purely factual issue, and her credibility or non-credibility with regard to that doesn't matter because we can't review it. However, we can review the withholding of removal issues, so why don't we go to that? Well, if we look at the facts of the case, the young lady was imprisoned, sexually abused, and persecuted on account of her brother's political opinion. There is evidence in the record in the form of substantial affidavits, a bank account book showing the name of both Ms. Carr and her brother, and there is evidence in the record that the brother was a member of a political party in India, that background documentation supports a finding that the party was persecuted. Now, the severity of the persecution which was not addressed in the judge's decision or by the Board of Immigration Appeals, well, I strike that. The Board of Immigration Appeals did uphold the judge's denial, but there was never an analysis of the severity of the past persecution by the immigration judge. So the fact that the fact that the State Department report reflects that police continue to act with impunity throughout India, that the long arm of the law can reach from State to State to State, and the fact that ---- Okay. But of course your problem is that she was found not credible, so now we have to go back to the credibility issue with regard to the withholding. Well, my position is that the adverse credibility determination should not withstand the scrutiny of this Court. The judge did not analyze the statements that the Respondent made about her persecution. The judge found that the only inconsistency within the Respondent's testimony putting aside the issue of entry was that there was a membership slip showing the brother's membership in a political party. She apparently told the asylum officer that her parents got the slip from the party itself. In court, she told the ---- in court, she testified that the slip was at home with her parents. First of all, that's not an inconsistent statement. Second of all, this is a slip that was sent to her. She had nothing to do with the preparation or obtaining the slip. That is not a proper basis to find that the balance of the testimony ---- I thought, and it wasn't clear to me exactly why it was pertinent to, but it seemed that there was some suggestion that if they had gone to pick it up, it was too late because that was because the brother wasn't around anymore and also why would they be doing that. So then she changed her story to this other thing. And the notion was that she was sort of conveniently changing her story because the first one didn't make any sense given the dates and given her story about what the brother had done. I'm not too clear on that, but that was my understanding. Well, again, I would argue it doesn't enhance her claim. It doesn't go to the basis of her persecution. Well, it might if in fact she was changing her argument, her facts, because in order to adjust it for the time that she claims that she left and for the period that she said her brother was and wasn't there because her brother was the reason for her. Since the brother was the reason for her imputed political opinion, if this doesn't hook up with the brother in a logical fashion, then it suggests that she's either creating the brother or creating the membership of the brother or something like that. Well, the Court didn't find that it was a fraudulent piece of evidence. The Court was concerned with her change of testimony. I would argue that her change of testimony to explain the existence of a very important piece of evidence, again, is not a proper basis for an adverse credibility finding given the fact that she testified consistently with her application, consistently with the 10 exhibits, 11 exhibits that she supplied in support of her case. The judge summarily dismissed the supporting documentation, and that should have been considered as additional evidence in support of Ms. Carr's testimony. And I'd like to reserve some time. Thank you very much. May it please the Court. My name is Bill Brown, representing the Attorney General in this case. As the beginning of the Petitioner's oral argument, we seem to establish it's the government's position that the one-year bar claim, the one-year bar's review of the judge's factual determination that she was untimely. If there's any questions on that, I'll be happy to address it. Give me the two dates. One date, the date that she entered a record reference, and two, the date that the request for asylum and withholding was filed. She claimed to have entered on November 20th of 2002. The asylum petition was filed in, I believe, March of 2003. And we don't know when she actually came in. March of 2003? That would be within a year. That's correct. The IG looked at the entry records for the time and place that she claimed to have arrived, and they refuted that claim. So she did not arrive, as the IG found, that she did not arrive when she claimed she arrived in November. And he found she arrived at another date? We don't know when she arrived. It's under the asylum law, it's her obligation to prove, by clear and convincing evidence, that she has filed the application within a year. I have a weird little question about the record in that regard. You know, this is ‑‑ I'm sure there's an explanation, but these manifests that come in uniformly have people coming in last name first. And then when you get to the cower or market list, it has ‑‑ they're backwards. So I'm wondering whether there's any chance they were looking right. Do you know what I'm saying? If you look at the actual lists. I have, specifically with regard to these lists and that name, I have no ‑‑ nothing to add to the record. All I can ‑‑ But it's really odd, because everywhere else it's plain that you have the last name first. And lists of the Manchit cars, all called Manchit, comma, car, would suggest that Manchit is the last name and car is the first, because that's true of every other name that's on this list. I don't know what that's about. I don't either, Your Honor. But the ‑‑ like all the other evidentiary claims that pertain to whether or not she entered on that date, this Court has no jurisdiction to review that. And there was ‑‑ and that's where we stand. I wasn't prepared to argue. But there's something really odd about this rule, because the rule is we can't review discretionary decisions. But it doesn't seem to me that making a clear error of fact is a discretionary decision. In our general law, we say that if you make a clear error of fact, that's not within your discretion. It's an abuse of discretion. And similarly, when we review cases under EDPA, under Jackson v. Virginia, for whether there's sufficient evidence for constitutional reasons, we call that a legal issue, not a factual issue, because we don't find facts. We're an appellate court, and all we're doing is making a legal determination as to whether the facts were sufficient. So I'm not sure the whole thing doesn't eventually collapse of its own weight. I mean, have you thought about that? I mean, what does it mean to say that we're reviewing the facts in a discretionary decision in a way that's not a legal decision? It's what of law, because we don't have the right to do anything but what of law, make decisions of law. There's a difference between a factual, as the court mentioned at the beginning of the ‑‑ there's a difference between a question of law, which under this, under Ramadan, and even under Ramadan, but especially ‑‑ But all we're ever deciding is whether there's substantial evidence on the record as a whole. We're not finding the facts. So why isn't that a legal issue? Is there substantial evidence on the record as a whole? That's not a legal issue? It is, but it's a question of fact. You're reviewing a question of fact, and the Court doesn't have the jurisdiction under the statute to review decisions of fact by the Attorney General. Much like ‑‑ well, here there's a broader review of credibility, for example, of a credibility decision by the immigration judge than there would be of a, in a criminal case, of the credibility of a witness. The Court theoretically has the power to look at witness credibility in a criminal case, but not really. That's not what this Court does. But there's no ‑‑ With regard to the withholding, the two questions I have are, first, and the credibility issue with regard to the withholding. Why ‑‑ the BIA specifically brought in the finding that she lied about when she arrived as relevant to her credibility on the withholding. So I'd like to know, under our case law, why that works. And second of all, maybe you can explain to me exactly how this issue about where the document was found, you know, matters with regard to the asylum issue. I may hook up. I'm just not quite getting it. The document, turning to the ‑‑ well, first of all, on the ‑‑ where the Court is entitled under this Court's case law to look at credibility based on the whole record, if there was a thousand lies or ten lies or eight lies that didn't go to the heart of the matter. The Court can look at that in the context of the overall case. What this Court, I believe, has held is that you can't just base a decision. All right. So that means everything turns on the other issue. So what else was not credible? Okay. The one that went to the heart of the matter was this card. Okay. This membership card that supposedly was her brother and supposedly showed his membership in this political organization. And what the record shows was that she had told the asylum officer one story about how this was obtained, and that was that it had been ‑‑ that her parents had gone to get this document upon her request after she arrived here. The other story which she told the asylum officer was that this was a document that the brother had supposedly obtained at the time of ‑‑ I thought it was the other way around. I thought she said the first one to the asylum officer and the second one on testimony, no? I believe I'm correct. Maybe you are. Okay. The long period of time was the story of the asylum officer, but it doesn't matter. Well, it does matter, actually. To me it matters, and the reason it matters is because if we're ‑‑ if she changed the story in the direction of saying that it was just that they went and got it after she left, then I don't see any advantage to her to changing the story in that direction. But if she changed it in the other direction, it seems that she needed to do that in order to make a sensible story out of it, because why would the parents ‑‑ why would the brother not have his membership card, and why did the parents have to go get it after she got here, after the brother had disappeared? Okay. I find myself a little bit confused. I don't even remember what I said a moment ago. I'm not sure either. I thought it was the other one. But I do know that the ‑‑ The asylum officer heard that ‑‑ he goes first, right? The asylum officer heard that Cower testified that her parents had the document issued in November 2002 in the village of Talani, mailed it to her the same month, and that her brother never carried the document. That's correct. Story one. Story two. She testified that her brother had given her ‑‑ given the card to her mother, and later her mother found the card lying at home. That may not be so inconsistent in itself, but it is inconsistent with the first story. That's your point, right? That's correct. And there's a question about, from the immigration judge's view, as to whether or not she was credible as a whole. The immigration judge did not believe her testimony. Well, yeah, but he's got to say more than I don't believe her. Exactly. And the immigration judge found it significant that she was changing her story with respect to this significant document as to how it might have been obtained. I mean, we don't know whether it was obtained, how it was obtained. But if she had said, I found it, it was at my grandmother's house, and then the next time she said it was at my mother's house, could that possibly make any difference in terms of our case, law about the heart of the claim and all that? What difference would it make where it was found? I mean, it has to make some difference. It may make a difference here, and that's what I'm trying to get to. But simply because she had slightly different stories about where it was found, why would that make a difference? Why would she even know that? Because it shows, it throws doubt into the single document that would associate her with this political party. If I say, look, you know, I have this document. Where did I find it? I think I found it upstairs in a closet. No, maybe I found it downstairs in a closet. Does that really throw any light on whether this document is the document that I say it is? Well, I think the answer is certainly it could. If I said I got a document from San Francisco three years ago, oh, no, I found it in the street, it may raise the question of where did this document come from. Here we have when she was challenged on this basis at the hearing, her response was to say that she was mistranslated by the interpreter. And the hearing went on to bring in the interpreter to see if there was evidence of mistranslation. And it was established that she was, at least to the adjacent satisfaction, that she had, that that was not a legitimate explanation. She wasn't truthful there either in the sense of the IJ found that the translation was legitimate. So she was explaining this, these different stories, not on the ground that, oh, well, maybe there was something, you know, I don't really remember. But, no, I didn't say that. And that was also proved false. Okay. Thank you very much for your argument. Do you have something else? I have just one other comment. Well, two, both related to the withholding. One, withholding is not raised in the brief. I don't think that's fair. What else was the whole discussion about if it wasn't about withholding? That's the point at which the BIA discussed it. The BIA discussed this issue with regard to withholding. And the response to it, it seems to me, is a response to what the BIA said. Be that as it may, the brief strictly is directed toward the asylum claim. We will make that argument. I looked at it carefully, and I don't think that was right. And the last thing I will say is that if the Court does find that there is a problem with the credibility determination by the board, the appropriate remedy, of course, on the withholding would be to send it back to the board to address that in view of this Court's determination. Thank you very much. Thank you. Two very brief points. The first issue I want to raise is that how the card came into the hands of Harpal Carr's parents is clearly beyond the scope of her personal knowledge. Beyond the scope of her personal knowledge. At no point did she ---- Well, if it were lying around the house, that wouldn't be beyond the scope of her personal knowledge. If it was lying around the house when her brother was there, it wouldn't be beyond the scope of her personal knowledge. I believed her testimony to mean that her parents found it at home and sent it to her, not that it was a common document that she would see on a day-to-day basis at the home. In other words, she called her parents, she asked them to send her evidence, and they sent her not only this card, but a slew of affidavits, which are also considered as evidence, perhaps with diminished weight, that the brother was a member of the party and that both she and her brother were persecuted by Indian authorities. Okay. Anything else? I don't want to let go of the one-year issue. Thank you, Your Honor, for giving me some extra time. I would still argue that because it does not go to the heart of the claim of the persecution, that if credibility is reversed, that the I.J. Holding, that the testimony on entry is not credible. But it does go to the heart of that question, so I don't understand your point. It may not go to the heart of the asylum question on the merits, but it certainly goes to the heart of the one-year question. It is the one-year question. Well, the Respondent's testimony can be considered as evidence. It can be given full weight as evidence. And if the Respondent's testimony on that issue is believed, then she did enter within one year of filing her application. Okay. Thank you very much. Thank you. Thank you. The case of Karr v. Gonzalez is submitted. The next Karr v. Gonzalez case, 71978, is to be argued now.
judges: Berzon, Bea, Gibson